[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
George P. Boles, Jr. is appealing from his conviction and sentence for telephone harassment against his former wife, Sandra L. Hunley, in violation of Sec. 537.10 of the codified ordinances of the City of Fairborn, Ohio, a violation of which is a misdemeanor of the first degree. The facts of the case and the findings of the court are succinctly presented in the decision and judgment entry of the trial judge, the Hon. Catherine M. Barber, Judge of the Fairborn Municipal Court, which, in its entirety, we approve and adopt as our own:
 This matter came before the Court on March 31 and April 25, 1997 for bench trial. The City of Fairborn was represented by Prosecuting Attorney Michael A. Mayer; Defendant was represented by Attorney Samuel Latham. After hearing the evidence and arguments of counsel the Court took the matter under advisement. After thoroughly reviewing the appropriate statutory and case law, the exhibits and the testimony of the six city and four defense witnesses, the Court is prepared to render a decision.
 The Defendant was charged in the Complaint with telephone harassment, a violation of Fairborn City Ordinance 537.10, a misdemeanor of the first degree.
 Defendant and Sandra Hunley were divorced in Greene County, Ohio in 1991; they have two children, George, III and Ty. Sandra Hunley is now married to Kim Hunley. Defendant was convicted in 1993 in this Court of telephone harassment involving Sandra Hunley and had jail time suspended on condition he have no similar conduct or violations. On April 30, 1996 in a post decree order from Judge Voris, visiting judge in Greene County Common Pleas Court, Division of Domestic Relations, Defendant was "prohibited from calling the children at Plaintiff's (Sandra Hunley's) residence."
 On the afternoon of November 16, 1996 Defendant was doing work at a duplex next door to the apartment building Kim Hunley owns and the two had a brief conversation. Defendant requested extra visitation with his son, George, III and Mr. Hunley turned down that request. On that same night, at approximately 6:59 p.m., Mrs. Hunley got a "hang-up" call. Using a computerized trap installed on her line she initiated a call trace. According to Ameritech records the call originated from the phone registered to Defendant at 2933 Valleyview Drive.
 Mrs. Hunley immediately called her mother June Ferguson who lives across the street from Defendant and at 7:02 p.m. Mrs. Ferguson saw Defendant's Bronco at his house. There was a great deal of conflicting testimony as to when the Defendant left the work site, when he arrived home and when he left his house to go on a date.
 Defendant denies making the "hang-up" phone call. Defendant is the sole subscriber to the phone number listed at his Valleyview Drive address. He lives there alone. He was unsuccessful in his attempt to place anyone else at his home that day. Defendant has no call forwarding option on his telephone.
 There is convincing, uncontroverted evidence that a telephone call originated from the Defendant's phone to the residence of Sandra Hunley at 6:59 p.m. on November 16, 1996. There is credible direct evidence from June Ferguson that Defendant was home at that time and there is substantial circumstantial evidence that Defendant was home at that time. No one but the Defendant was placed in that home at that time and date. There is no question in this Court's mind that the Defendant was at his Valleyview home at 6:59 p.m. and that he made the phone call to Mrs. Hunley's residence.
 Having found that Defendant made the phone call, the Court turns to the issue of whether the call was made with purpose to harass, abuse or annoy any person at the premises to which the call was made, whether or not conversation took place during the telephone call. Defense argues that even if the call were made by Defendant, which they emphatically deny, the call was not harassing in that it was just a "hang-up" and since Defendant is only restricted from calling the children, not Mrs. Hunley. To support his position, Defendant cites Dayton v. Glisson (1987), 36 Ohio App.3d 159
which held that evidence of ill will between the complainant and the defendant, plus evidence from a computerized "trap" that anonymous, silent harassing calls were made from a single telephone line listed in the names of the defendant and her husband as subscribers, is insufficient to convict the defendant of telephone harassment beyond a reasonable doubt. The Glisson case can be easily distinguished from the case sub judice in several ways. First, in the within case the Defendant lives alone and could place no one else at his home on the time and date in question. Secondly, this case involves more than just "ill will." Defendant was well aware that he had been ordered by the Common Pleas Court not to call the children at Mrs. Hunley's residence and the Defendant understood that he could not call Mrs. Hunley's residence at all. This understanding came from a suspended sentence received in this Court when he called Mrs. Hunley on a previous occasion. Defendant and Mrs. Hunley have a history of bitter and protracted legal disputes about telephone issues and it should come as no surprise to the Defendant that a call to Mrs. Hunley's residence would be harassing or annoying to the person accepting the telephone call. The Court does not consider it coincidental that there had been a visitation disagreement just hours before this phone call was made.
 WHEREFORE, the Court finds that the totality of all the direct and circumstantial evidence does provide proof beyond a reasonable doubt that the Defendant is guilty of the charge of telephone harassment. Counsel for Defendant shall contact the Assignment commissioner within seven (7) days of the receipt of this Decision and Judgment Entry to set a date for sentencing.
SO ORDERED.
This court initially notes that the appeal in this case was filed one day after the expiration of the thirty day time limit for appeals, and is, therefore, untimely. However, we also recognize the fact that the defendant can file a motion requesting leave to file a delayed appeal under App.R. 5, and that this court would undoubtedly grant the motion. Therefore, in the interest of saving time and unnecessary paperwork, we are treating this appeal as a delayed appeal allowed by leave of this court.
The appellant has presented us with the following single assignment of error:
 THE TRIAL COURT ERRED WHEN IT FAILED TO SUSTAIN THE APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL AND INSTEAD ENTERED A JUDGMENT OF CONVICTION FOR TELEPHONE HARASSMENT AGAINST THE APPELLANT WHEN THE STATE FAILED TO PROVE ALL THE ESSENTIAL ELEMENTS OF THE CRIME, WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND WHEN THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The appellant has essentially raised two issues in his one assignment of error, to-wit, that the decision was against the manifest weight of the evidence, and that the evidence was insufficient to support the conviction.
This court has recently considered the difference between these two standards and exhaustively analyzed them in State v.Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported. We will not repeat the analysis here, but only its conclusions, to-wit: (1) when reviewing the sufficiency of the evidence to support a criminal conviction an appellate court must
 examine the evidence admitted at trial to determine whether such evidence if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, syllabus 2. (2) But in analyzing the weight of the evidence, the appellate court can exercise a slightly broader standard and assess, to a limited degree, the believability of the evidence presented. This standard allows the reviewing court to judge the credibility of opposing opinion testimony but not of fact testimony, unless it is so incredible that it defies belief.
We are satisfied that the conviction before us passes both tests. The City obviously presented sufficient evidence to support a conviction. It produced uncontroverted evidence of a telephone call being made from the residence of the appellant to that of the complainant and there was eye witness testimony that the appellant was present in his house at that time. This evidence, if believed, and it was obviously believed by the trial court, would be sufficient to support the conviction.
As to the manifest weight of the evidence, we have here another classic case of a trial judge being forced to choose between two conflicting sets of testimony, and the issue is clearly one of credibility of the witnesses. As we have said, even in a manifest weight of evidence issue, we will not disturb the choice made by the trier of fact between credible witnesses and their conflicting testimony unless it is so incredible that it defies belief, and we do not find it that incredible here. The trial judge necessarily had to find the appellant's version of the events not credible, and that decision is for the trier of the fact. For a similar case where the trier of fact chooses the complainant's testimony as credible against the accused's testimony to the contrary, see City of Dayton v. Versic (Mar. 15, 1996), Montgomery App. No. 15223, unreported. We will give deference to the findings and conclusion of the trier of fact "where there exists competent and credible evidence supporting the findings and conclusions of the trial court." Myers v. Garson
(1993), 66 Ohio St.3d 610, 614.
Before the trial court and upon appeal, the appellant relies on the decision of this court in Dayton v. Glisson (1987),36 Ohio App.3d 159. As the trial court observed, however, that case is readily distinguishable on the facts from the case before us here. In that case, this court, in the opinion authored by Judge Fain, commented twice that the evidence of motive was very weak, whereas here we have very powerful motive evidence as well as a pattern of prior conduct of telephone harassment engaged in by the appellant against the same complainant. Moreover, in Glisson, the telephone from which the harassing calls were made was registered in the names of two people, whereas here the telephone was registered solely to the appellant. Finally, the evidence in Glisson was strictly circumstantial whereas here there is direct probative testimony placing the appellant in his residence at the exact time the harassing call was made.
The assignment of error is overruled, and the judgment is affirmed.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
Michael A. Mayer
Terry L. Lewis
Samuel S. Latham
Hon. Catherine M. Barber